## THE EDWIN TERRY.

### THE WILLIAM E. CLEARY.

#### (District Court, S. D. New York. April 27, 1906.)

TOWAGE—SINKING OF TOW BY ICE—NEGLIGENCE OF TUGS.

In the making up of a tow, the duty rests upon the tug to see that it is properly made up, and that proper lines are used, and, where a tow consisting of a number of vessels was being made up in the Hudson

river at a time when there were dangerous floes of ice being carried down by the ebb tide, the allowing of one of the tows to project beyond the others, and to swing out because of the absence of breast lines, in consequence of which she was struck by the ice, and after being beached by the tugs sank, was through the fault of the tugs, for which they are liable.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Towage, §§ 15, 21.]

In Admiralty.

James J. Macklin, for libellants.

Amos Van Etten, for claimant.

ADAMS, District Judge. This action was brought by the New York & New Jersey Transportation Company, owner of the barge Walter T. Lewis and Alexander Wilson, the master thereof, to recover from the tugs Edwin Terry and William E. Cleary, the damages sustained, through that barge being sunk by ice, with the personal effects of the master and his wife, in the Hudson River, near Edgewater, New Jersey, on the 30th day of January, 1905. The Lewis, laden with coal, was taken in tow by the Terry, in a flotilla of boats astern, to be delivered at South 3d Street, Brooklyn, and while the tow was being made up, near the starting place, was cut into by ice and received injuries from which she subsequently sank. Before sinking she was taken out of the tow by the Cleary and placed on the beach and received there additional injuries. The tide was ebb.

It appears that large quantities of ice were floating in the river, some of it broken up into small pieces and some of it in dangerous floes. The Lewis was lying in a protected position at Edgewater and taken therefrom in company with other boats, to make up the Terry's tow. At about 9:30 o'clock in the morning, the Terry was lying a short distance from the ends of the wharves, headed up stream, and receiving in her flotilla, which she held by a hawser, the boats as they were brought to her by two helpers, one of which was the Cleary. The Terry had three boats in her hawser tier, two in the next, of which the Lewis was the port boat, and one in the third tier. The Lewis was about two feet wider than the boat ahead of her and projected about that distance outside of and to the port of the head boat. In addition to the projection, she was swinging with the action of the current, it is alleged, through the absence of breast lines. Her port side being thus exposed, she received on her port bow the impact of one of the floes, which broke a hole in her. She was then taken out of the tow and beached by the Cleary a short distance away. At that time, a piece of the ice which did the injury remained in the hole it had made and she did not leak to any great extent but the ice subsequently came out, permitting an unobstructed entrance of water, and she received further injuries while on the beach.

It is alleged that the Terry was in fault: (1) in placing the Lewis in a position in the tow where she would be struck by ice; (2) in making up the tow at an improper time when the ice was moving in large fields rapidly down the river and (3) in not protecting the

boat from the ice. The Cleary was charged with fault in assuring the owners that the tug could and would protect and save the boat from further harm after beaching her; (2) in that those in charge of the tug were not sufficiently conversant with the work of keeping the boat pumped out; (3) that it was the duty of the tug in undertaking to prevent additional damage, to provide other tugs or apparatus for that purpose, well knowing that on the next tide she would be further exposed, and (4) in not placing the boat in a protected position.

The testimony shows that the Lewis was a substantial boat, well adapted, if well protected, to be navigated in the ice that usually prevails in the winter time in New York Harbor but not having a stem suitable to withstand heavy ice in a strong tide. None of the other boats in the tow received any injury on this occasion and it is probable that the Lewis would have escaped, if it had not been for her exposure on the port side, outside of the line of the preceding boat. It was there that she received the original injury and it was doubtless due to such exposure, which resulted from the greater width of the Lewis and her swinging of several feet on account of the absence of breast lines. When the tow was made up, the Lewis was lying behind the preceding boat in the same manner as she was when the ice came. After she was in the tow, the master of the Terry, seeing the swinging, called out to the master of the Lewis to get out breast lines. The latter said he did not hear such order but the preponderance of the testimony shows that it was given so that he could hear it. He says, however, that his boat was not in a position to use breast lines, as the boat on his starboard side was much smaller in size, so that they did not lie together in a favorable position to make such lines fast so as to be of advantage. There is no doubt that there was some justification for this excuse, but, in any event, the absence of breast lines was not the sole cause for the injury, as the projection from the size of the Lewis rendered her subject to such an accident, and it is probable it would have happened without the absence of the breast lines. Her exposed position was certainly a contributing cause, and there can scarcely be any question that the tugs were responsible for that. If, however, the injury can be regarded as due to the absence of breast lines, still the tugs would be liable, because it was their duty to have the tow properly made up, which included the use of proper lines.

The succeeding injuries resulted from the first and the liability therefor follows.

Decree for the libellants, with an order of reference.